UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL FRANCOIS,

        Petitioner,

v.                                                    Case No. 3:26-cv-458-MMH-SJH

SECRETARY MARKWAYNE
MULLIN, et al.,

        Respondents.

_____

## **ORDER**

Petitioner Michael Francois, an immigration detainee, initiated this action through counsel by filing a Verified Petition for Writ of Habeas Corpus (Doc. 1) on March 3, 2026. He is proceeding on an Amended Verified Petition for Writ of Habeas Corpus (Doc. 8; Amended Petition), in which he argues that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in Zadvydas v. Davis, 533 U.S. 678 (2001), and his Order of Supervision (OSUP) was improperly revoked.

The Federal Respondents (Markwayne Mullin, Todd Blanche,[1] Todd Lyons, and Kelei B. Walker) filed a Response to Amended Verified Petition for

_____

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Markwayne Mullin and Todd Blanche are automatically substituted for Kristi Noem and Pamela Bondi, respectively.

Writ of Habeas Corpus (Doc. 18; Response) with exhibits (Docs. 18-1 through 18-6). Respondent Warden Ronnie Woodall filed a Motion to Dismiss (Doc. 17), arguing he is not a proper respondent in this case. Francois filed a counseled Reply (Doc. 19). This case is ripe for review

## II. Background

Francois was born in the Bahamas to Haitian parents; he entered the United States when he was two years old. Amended Petition at 11. According to Francois, he has "no established nationality or country of citizenship and is stateless." Id. On June 16, 1992, Francois adjusted his status to permanent resident alien. Id. Francois was subsequently convicted of burglary of a conveyance and "drug offenses." Id. On August 26, 1997, an immigration judge ordered Francois removed to the Bahamas. Id.; see also Doc. 18-4 at 1. He did not pursue an appeal; therefore, the order of removal became final on September 26, 1997. Amended Petition at 11.

The United States Department of Justice (DOJ) formally requested travel documents from the Consulate of Bahamas on September 13, 1997; February 23, 1998; June 12, 1998; and November 5, 1998. Id.; see also Doc. 8-1 at 1–4. However, the Bahamas declined to accept Francois in 1999. Amended Petition at 11–12; see also Doc. 8-2 at 1. The DOJ also formally requested travel documents from the Consulate of Haiti on June 12, 1998; November 9, 1998; January 14, 1999; and October 28, 1999. Amended Petition

at 12; see also Doc. 8-3 at 1–5. "It is believed that these requests were formally denied." Amended Petition at 12. Francois was ultimately released from custody pursuant to an OSUP in December 1999. Id.; see also Doc. 18-5 at 1. After his release, Francois applied for and received employment authorization. Amended Petition at 13.

On December 27, 2025, United States Immigration and Customs Enforcement (ICE) detained Francois at the Orlando International Airport "on his way to a work site in Texas" and "without notice or formal revocation of the OSUP." Id. According to Francois, ICE detained him even though he had "received permission from ICE to travel outside of the State of Florida for routine work." Id. Francois remains in ICE custody at Baker Correctional Institute. Id.

### III. Analysis

In Count One of his Amended Petition, Francois argues that he is entitled to release under Zadvydas, because his post-removal order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. Amended Petition at 14–16. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-

3

ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[2] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to

---

[2] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, the Court first considers whether the presumptively reasonable six-month period has expired. Courts have used various methods to calculate the six-month period. Some courts have considered in the aggregate all periods of detention following an order of removal, regardless of whether the periods of detention were consecutive. See Jaranow v. Bondi, - - - F. Supp. 3d - - -, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be

5

consecutive to reach the limit established in <u>Zadvydas</u>"); <u>Patel v. Bondi</u>, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the current length of detention). Other courts have not—instead they have determined that each period of detention restarts the removal-period clock. <u>See</u> <u>Barrios v. Ripa</u>, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals"); <u>Liu v. Carter</u>, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."). Still other courts appear to have determined that the presumptively reasonable six-month period includes the 90-day statutory removal period and the 90-days immediately thereafter and expires once that time has run. <u>See</u> <u>Beltran v. Ripa</u>, No. 2:25-cv-01174-SPC-NPM, 2026 WL 21252, at *2 (M.D. Fla. Jan. 5, 2026).

The Federal Respondents contend that the authority to detain Francois remains within the presumptively reasonable six-month period because, considering only Francois's most recent detention, as of the date of the filing of

6

the Petition, ICE had detained Francois for approximately 73 days. Response at 5. The Court is not persuaded that the presumptively reasonable period of detention restarts with each new detention in every circumstance. Instead, the Court finds that once an individual has been detained for more than six consecutive months after his final order of removal is entered, he has met the first prong of the Zadvydas test. Here, ICE previously detained Francois for nearly two years—between September 26, 1997, and December 17, 1999. As such, Francois has already been detained beyond the presumptively reasonable six-month period.

Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies. Francois has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, despite ICE's efforts for twenty-eight years to remove Francois, the Bahamas and Haiti have refused to issue travel documents for him. Amended Petition at 11–12. And there is no evidence that any other country has been willing to accept him. Thus, the burden shifts to the Federal Respondents.

The Court finds that the Federal Respondents have not submitted evidence sufficient to rebut Francois's showing that there is no significant likelihood of removal in the reasonably foreseeable future. The Federal Respondents submit the declaration of Corey L. Horton, Jr., an ICE

7

deportation officer. See generally Doc. 18-6. Horton confirms that ICE requested travel documents from the Bahamas and Haiti in 1998, 2008, and 2009. Id. at 2. He states that on March 25, 2026, an Enforcement and Removal Operations (ERO) case officer prepared a travel document request and sent it to the Haitian Removal International Operations. Id. According to Horton, the travel document request is still pending. Id.

The Court does not find this evidence persuasive. While an ERO officer has submitted a travel document request to Haiti, Haiti has denied similar requests on behalf of Francois in the past. See Doc. 8-3 at 1–5. And the Federal Respondents do not explain why Haiti would be more inclined to provide travel documents for Francois now, nor do they provide a tentative timeline for a response to the request for travel documents.

It is not lost on this Court that most recently, Francois remained in custody for nearly three months—between December 27, 2025, and March 3, 2026—without ICE making any sort of renewed effort towards removal. Only after Francois retained counsel and filed his Petition did ICE submit a travel document request to Haiti. That three-month period is the exact sort of indefinite detention that the Zadvydas court recognized presented constitutional concerns, particularly in civil, nonpunitive proceedings like immigration. Considering this record, the Court finds the Federal Respondents have failed to show that there is a significant likelihood Francois will be

removed in the reasonably foreseeable future. Therefore, Francois is entitled to release from detention under <u>Zadvydas</u>.

Because the Court will grant the Amended Petition on the basis of Francois's <u>Zadvydas</u> claim in Count One, it need not, and does not, address Francois's remaining claims.[3] <u>See</u> <u>Banks v. Dretke</u>, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); <u>see, e.g.</u>, <u>Pena-Gil v. Lyons</u>, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) ("Because the Court will grant petitioner's petition on the basis of his <u>Zadvydas</u> claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention.").

Accordingly, it is **ORDERED**:

1.    Francois's Amended Verified Petition for Writ of Habeas Corpus (Doc. 8) is **GRANTED** as to Count One. Respondents shall release Francois **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected. Francois shall be subject to his preexisting Order of Supervision.

---

[3] Insofar as Francois requests attorney's fees, he may make such a request in a separate motion, if appropriate. <u>See</u> Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

9

2.      Respondent Warden, Ronnie Woodall's Motion to Dismiss Amended Petition for Writ of Habeas Corpus (Doc. 17) is **DENIED**. See, e.g., Fonseca v. Ripa, No. 3:26-CV-309-MMH-MCR, 2026 WL 1072778, at *4–5 (M.D. Fla. Apr. 21, 2026).

3.      The **Clerk** is directed to terminate any motions, enter judgment granting the Amended Petition as to Count One, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of May, 2026.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 5/1
c:      Counsel of Record

10